THE LEHIGH COAL AND NAVIGATION COMPANY

*v.*

THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

After the appointment of a receiver of an insolvent corporation by this court, and proceedings in foreclosure, an agreement among the secured and general creditors of the corporation, was entered into, whereby certain income bonds were to be issued, " payable in thirty years, with interest at seven per cent., payable half-yearly," and the interest was to be paid, if the company should "be able to pay it by its income, after paying claims prior thereto, within the year," and the annual interest should not be allowed to accumu-

late.  A committee to arrange the details of the plan was appointed.— *Held,* that the committee had authority to consent that the bonds should be made payable, at the option of the company, on or before the expiration of thirty years from the date of their issue ; and held, also, that the receiver would not be ordered to pay the interest on the bonds while the floating debt of the company remained unpaid.

---

Petition for rectification of income bonds and for directions to the receiver as to the payment of interest thereon.

*Mr. William Man,* of New York, for the petitioners.

*Mr. F. T. Frelinghuysen,* for the railroad company and the receiver.

The Chancellor.

On the 14th of February, 1877, the Central Railroad Company of New Jersey was, on proceedings in this cause, adjudged insolvent, and a receiver appointed.  On or about the 9th of January, 1878, those proceedings being still pending, a suit for foreclosure of the mortgage of $20,000,000, known as " The Convertible and Consolidated Bond Mortgage," was begun.  On the 3d of February, 1878, in view of that suit, an agreement for " the equitable adjustment of the affairs of the company without a foreclosure," was entered into by and between the holders of bonds of the Lehigh and Wilkesbarre Coal Company and that company itself ; the holders of bonds of the American Dock and Improvement Company ; the holders of the " consolidated and convertible " bonds of the Central Railroad Company ; the stockholders of that company ; the company itself and the receiver ; the Lehigh Coal and Navigation Company ; the North Pennsylvania Railroad Company, and the Delaware and Bound Brook Railroad Company.  The object of the agreement was to terminate the foreclosure suit, to pay off the unfunded debt of the company, and then, with due consent, restore the company to the possession and management of its property.  It contemplated, among other things, the issuing of bonds, secured by mortgage on

property of the company not already mortgaged, to an amount not exceeding $5,550,000, and other bonds called "income bonds," payable out of the income of the company, to an amount not exceeding $2,036,800.   The bonds secured by the mortgage were to be used in exchange for the coupons for two and a half years' interest of the "convertible and consolidated" bonds, and to secure money to be contributed by the stockholders, and the income bonds were to be used in exchange for stock surrendered under the agreement, and also, if necessary, to compromise and settle with the general unsecured creditors.   The agreement provided that the income bonds should be payable "in thirty years, with interest at seven per cent., payable half-yearly," and it provided also, that the interest was to be paid if the company should "be able to pay it by its income after paying claims prior thereto, within the year," and that the interest was "not to be accumulated or carried over from one year to another."   By the agreement, "a committee of detail" was appointed, to whom was committed the regulation and direction of any matter of detail which might, in their judgment or that of a majority of them, be necessary or expedient for carrying out the plan proposed by the agreement.   The income bonds issued under the agreement were issued May 1st, 1878, and were made payable on or before May 1st, 1908.   The floating debt has not been paid, and the receiver refuses to pay the holders of those bonds any interest, or to recognize their right to any until after that debt shall have been paid.   The petitioners, for themselves and other holders of those bonds, ask that their bonds may be rectified by striking out the words giving the company an option to pay the bonds before May 1st, 1908, and that the receiver may be instructed that the income is applicable to the payment of interest on the bonds before payment of the floating debt.

When the nature of the agreement and the different interests of the various parties to it, and the great number of persons constituting some of those parties, are considered, the necessity for referring matters of detail to a committee, is evident.   And by the term "matters of detail" in the agreement, was obviously meant not merely such matters as regarded the formal execution of the

Lehigh C. & N. Co. *v.* Central R. R. Co.

provisions of the agreement, but also such alterations in the terms of the agreement itself (not changing the plan) as might be deemed necessary or advisable to effectuate the object. In respect to the income bonds, it may have proved necessary or expedient to provide for an option to the company as to the time of payment. In all such matters it was left to the committee to determine, according to their own judgment, what would be likely to be most acceptable and most conducive to the success of the project. It is to be remembered that the plan was for the benefit of all who were interested in the company, and it was most important that it should be acceptable to and favored by as many of them as possible. Thence arose a necessity for leaving it to a committee to make such variations in the details of the plan as they might deem necessary or expedient, in order to commend it or make it satisfactory to those whose concurrence in it was solicited, and whose co-operation might be vitally necessary. The matter under consideration was within the province of the committee, and it must be presumed that they acted upon it, and that the insertion of the option was by their direction. Moreover, it is three years since the bonds were accepted, and, hitherto, no complaint has been made of the change. No ground for equitable relief is presented. The prayer for rectification will be denied. The object in issuing the income bonds for a proportion of stock surrendered, undoubtedly, was to induce the stockholders to make the advance of ten per cent. The money advanced was secured by mortgage bonds. It was evidently supposed that the plan would furnish the means of paying the floating debt. The receiver was thereby authorized to compromise and settle it by the use of the unappropriated balance of income bonds at par, or with property not otherwise disposed of by the agreement, and it was presumed that that provision was sufficient for the purpose. The exchange of income bonds for stock surrendered, was (though that was not the form of the transaction), in effect, creating preferred stock to the extent of the surrender. The floating debt has not been paid, but a large amount of it is still outstanding. The agreement makes the interest on the income bonds for any year payable, if the company is able to pay it, out

of its income after paying claims prior thereto within the year, but otherwise it is not to be paid at all. The agreement would undoubtedly have made express provision in that connection for the previous payment of the floating debt, but for the supposition and assumption that by the plan enough money would be obtained to pay it off. But the omission to do so will not affect the construction to be put upon the agreement. The company cannot be said to be able to pay interest on those bonds in any year in which its income is necessary for the payment of its floating debt. The floating debt is a prior claim. Had the usual form of preferring the stock been adopted, the stock would, of course, have been entitled to no dividends until the debts should have been paid or provided for. The obligation to pay dividends is necessarily subject to the paramount obligation to pay the debts. It is not to be supposed that the parties to the agreement intended to give to holders of the income bonds, for which nothing was paid or to be paid, but which merely represented so much of the stock of the insolvent corporation, a lien on the annual income for their interest, after paying claims falling due within the year, whatever the amount of other indebtedness of the company might be. On the contrary, it is evident that it was the intention merely to make the interest payable out of money which otherwise would be applicable to the payment of a dividend on the stock at large. The claim under consideration cannot be supported even on the mere letter of the agreement; for the company cannot be said to be able to pay the interest out of its income, after paying all prior claims within the year, while, as yet, its debts are unpaid or unprovided for. The petition will be dismissed, with costs.